IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KESHALA LIDDELL, a minor by her Mother and Father and Next Friends, NIKEIA LIDDELL and ALBERT MOTLEY,<br><br>        Plaintiffs,<br><br>Vs.<br><br>MARVA ECHOLS,<br>        Defendant. | ) ) ) ) ) ) ) ) No. 2010 cv 2875 ) ) ) ) ) |

## MINOR PLAINTIFF'S RESPONSE TO THE DEFENDANT'S 12(B)(6) MOTION TO DISMISS

NOW COME the Plaintiffs, KESHALA LIDDELL, a minor by her Mother and Father and Next Friends, NIKEIA LIDDELL and ALBERT MOTLEY, and for her Response to the Defendant MARVA ECHOLS' Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss, state as follows:

## MINOR PLAINTIFF'S SECOND AMENDED COMPLAINT ADEQUATELY PLEADS THE DEFENDANT'S RESPONSIBILITY FOR CRUEL AND UNUSUAL PUNISHMENT

Defendant's counsel cites several cases that state that the question of cruel and unusual punishment is "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Whitley v. Albers, 475 US 312, 313 (1986). This and the other cases on which the Defendant relies to make her argument that the minor Plaintiff has not properly alleged a violation of the Eighth Amendment are wholly factually distinct from the case at bar, and are completely inapposite of any issue raised by the minor Plaintiff's Second Amended Complaint. The background of the Whitley case is an example of the vast difference existing between the cited cases and the setting of the current case. The Whitley court provided the following facts:

At about 8:30 on the evening of June 27, 1980, several inmates were found intoxicated at the prison annex. Prison guards attempted to move the intoxicated prisoners, some of whom resisted, to the penitentiary's isolation and segregation facility. This incident could be seen from the cell windows in cellblock "A," and some of the onlookers became agitated because they thought that the guards were using unnecessary force. Acting on instructions from their superiors, Officers Kemper and Fitts, who were on duty in cellblock "A," ordered the prisoners to return to their cells. The order was not obeyed. Several inmates confronted the two officers, who were standing in the open area of the lower tier. One inmate, Richard Klenk, jumped from the second tier and assaulted Officer Kemper. Kemper escaped but Officer Fitts was taken hostage. Klenk and other inmates then began breaking furniture and milling about.

Upon being informed of the disturbance, petitioner Harol Whitley, the prison security manager, entered cellblock "A" and spoke with Klenk. Captain Whitley agreed to permit four residents of cellblock "A" to view the inmates who had been taken to segregation earlier. These emissaries reported back that the prisoners in segregation were intoxicated but unharmed. Nonetheless, the disturbance in cellblock "A" continued.

Whitley returned to the cellblock and confirmed that Fitts was not harmed. Shortly thereafter, Fitts was moved from an office on the lower tier to cell 201 on the upper tier, and Klenk demanded that media representatives be brought into the cellblock. In the course of the negotiations, Klenk, who was armed with a homemade knife, informed Whitley that one inmate had already been killed and other deaths would follow. In fact, an inmate had been beaten but not killed by other prisoners.

Captain Whitley left the cellblock to organize an assault squad. When Whitley returned to cellblock "A," he was taken to see Fitts in cell 201. Several inmates assured Whitley that they would protect Fitts from harm, but Klenk threatened to kill the hostage if an attempt was made to lead an assault. Klenk and at least some other inmates were aware that guards had assembled outside the cellblock and that shotguns had been issued. Meanwhile, respondent had left his cell on the upper tier to see if elderly prisoners housed on the lower tier could be moved out of harm's way in the event that tear gas was used. Respondent testified that he asked Whitley for the key to the row of cells housing the elderly prisoners, and Whitley indicated that he would return with the key. Whitley denied that he spoke to respondent at any time during the disturbance. Tr. 380.

Whitley next consulted with his superiors, petitioners Cupp, the prison Superintendent, and Kenney, the Assistant Superintendent. They agreed that forceful intervention was necessary to protect the life of the hostage and the safety of the inmates who were not rioting, and ruled out tear gas as an unworkable alternative. Cupp ordered Whitley to take a squad armed with shotguns into cellblock "A."Whitley gave the final orders to the assault team, which was assembled in the area outside cellblock "A." Petitioner Kennicott and two other officers armed with shotguns were to follow Whitley, who was unarmed, over the barricade the inmates had constructed at the cellblock entrance. A

2

second group of officers, without firearms, would be behind them. Whitley ordered Kennicott to fire a warning shot as he crossed the barricade. He also ordered Kennicott to shoot low at any prisoners climbing the stairs toward cell 201, since they could pose a threat to the safety of the hostage or to Whitley himself, who would be climbing the stairs in an attempt to free the hostage in cell 201.

At about 10:30 p.m., Whitley reappeared just outside the barricade. By this time, about a half hour had elapsed since the earlier breaking of furniture, and the noise level in the cellblock had noticeably diminished. Respondent, who was standing at the bottom of the stairway, asked about the key. Whitley replied "No," clambered over the barricade, yelled "shoot the bastards," and ran toward the stairs after Klenk, who had been standing in the open areaway along with a number of other inmates. Kennicott fired a warning shot into the wall opposite the cellblock entrance as he followed Whitley over the barricade. He then fired a second shot that struck a post near the stairway. Meanwhile, Whitley chased Klenk up the stairs, and shortly thereafter respondent started up the stairs. Kennicott fired a third shot that struck respondent in the left knee. Another inmate was shot on the stairs and several others on the lower tier were wounded by gunshot. The inmates in cell 201 prevented Klenk from entering, and Whitley subdued Klenk at the cell door, freeing the hostage.

As the court can see, the Whitley case involved a full-scale prison riot, rather than an alleged annoyed security guard. In that regard, the Whitley court stated as follows:

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d, at 1033, are relevant to that ultimate determination.

The Whitely court described what could be best called a sliding scale of force, in that the prison official must determine "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted..." In the case at bar, the Defendant's use of a telephone as a weapon, to use to smack the minor Plaintiff in the head and to press against the minor Plaintiff's throat, clearly

3

gets into that area of punishment in which the Defendant was intent on "inflicting unnecessary and wanton pain and suffering" rather than using that degree of force for her to restore order. The facts of the Whitley situation are quite different from the facts of the minor Plaintiff's case alleged herein, that it is no surprise that the Court held that it was proper for a verdict to be directed in favor of the prison officials. There was no riot or widespread prison disturbance alleged in the instant case; rather, what was involved was merely an altercation between the minor Plaintiff and the Defendant.

The other cases cited by the Defendant are also inapplicable to the case at bar. In Hudson v. McMillian, 501 US 1 (1992), the question before the Court was "whether the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury," 501 US at 4, and not whether the minor Plaintiff in that case had adequately pleaded the infliction of "unnecessary and wanton pain and suffering." The court affirmed summary judgment for the defendant in Outlaw v. Newkirk, 259 F.3d 833(7th Cir.2001) on the ground that the evidence showed that the minor Plaintiff's injuries were minor that "strongly suggests that the force applied by Mable was *de minimis.*" 259 F.3d at 839.

Moreover, Albers, Hudson and Outlaw concerned summary judgment or trial verdicts entered for the respective defendants, where the courts relied on evidence beyond the parties' pleadings, unlike a 12(b)(6) that was brought in the case at bar, a further indication that all of these decisions are inapposite to the case now before the court.

In Young v. Breeding, 929 F.Supp 1103, the Court noted that since the minor Plaintiff "does not allege that Molina's actions were excessive in extracting him from the cell, or that such conduct was malicious or sadistic," 929 F.Supp at 1107, it was granting the defendant's

4

motion to dismiss. In the case at bar, however, the minor Plaintiff alleged that "the Defendant inflicted on the minor Plaintiff punishment that was outside of the bounds of reasonable punishment and constituted punishment that was cruel and unusual." The court should find that this language satisfactorily meets the pleading criteria set forth in the Young case, and it should determine that minor Plaintiff's §1983 claim withstands the Defendant's motion to dismiss.

### THE MINOR PLAINTIFF'S AMENDED COMPLAINT PROPERLY INVOKES §1983

The Defendant claims further that a §1983 claim must "specifically allege a violation of the Constitution or 'law' of the United States," and argues for the dismissal of the minor Plaintiff's claim because, as she contends, "it does not assert unnecessary and wanton infliction of pain as required by the Eight Amendment." First, as the minor Plaintiff argued above, the Amended Complaint contains the allegation that "the Defendant inflicted on the minor Plaintiff punishment that was outside of the bounds of reasonable punishment and constituted punishment that was cruel and unusual." The minor Plaintiff contends that this language adequately asserts the "unnecessary and wanton infliction of pain," the linchpin of the Defendant's argument. Second, personal injuries have historically been the basis for many §1983 claims, as the Supreme Court noted in Wilson v. Garcia, 471 US 261 (1985):

> Relying on the language of the statute, the Court of Appeals for the Fourth Circuit has succinctly explained why this analogy is persuasive:
>
>> "In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'" Almond v. Kent, 459 F.2d 200, 204 (CA4 1972).
>
> Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights. 471 US at 278.

As with her Eighth Amendment claim, the court should further allow the minor Plaintiff's §1983 claim to stand as well.

## THE PENDENT STATE CLAIMS SHOULD BE ALLOWED TO STAND

Defendant contends that the minor Plaintiff's case should be dismissed on statute of limitations grounds because her state claims were filed 2 ½ years from the date of the occurrence. At the time of the occurrence, however, the minor Plaintiff's birth date is March 7, 1994, meaning that at the time of the occurrence, she was 15 years old, and she is currently 17 years of age; as such, her limitations period would not begin to run until March 7, 2012. In Bertolis v. Community Unit School Dist.No. 7. 283 Ill.App.3d 874 (4th Dist.1996), the court held as follows:

> Here, defendants argue the one-year limitation period found in the Tort Immunity Act governs this action. While defendants concede it would have been tolled during minor Plaintiff's minority, they argue that since minor Plaintiff did not file her action until almost two years after turning 18, the claim is time barred. Minor Plaintiff argues the two-year limitation period and tolling provision found in the Code applies to her action and contends, therefore, that her action was timely filed.
>
> Although the Tort Immunity Act clearly establishes a one-year limitation period for actions filed against local public entities, in addition to following the statute of limitations applicable to an action, we must also follow our state's tolling laws. See *877 *Hardin v. Straub,* 490 U.S. 536, 538-43, 104 L.Ed.2d 582, 588-91, 109 S.Ct. 1998, 2000-03 (1989); *Doe v. Board of Education of Hononegah Community High School District No. 207,* 833 F.Supp. 1366, 1375 (N.D.Ill.1993) (federal courts required to follow state statutes of limitation and tolling provisions).
>
> It is the public policy of this state that courts should guard carefully the rights of minors and a minor should not be precluded from enforcing his rights unless clearly debarred from so doing by some statute or constitutional provision. *Walgreen Co. v. Industrial Comm'n,* 323 Ill. 194, 197, 153 N.E. 831, 833 (1926). Accordingly, the courts have traditionally given special consideration to the claims of minors. This policy is reflected in the cases cited above and is codified in section 13-211 of the Code.

Thus, as the court can see, it has long been the policy of the State of Illinois that minor Plaintiffs such as the minor Plaintiff herein have until two years after the minor Plaintiff turns 18 years of age in which to file a claim against a local public entity;

> If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Act, at the time the cause of action accrued, is under the age of 18 years, or is under a legal disability, then he or she may bring the action within 2 years after the person attains the age of 18 years, or the disability is removed. 735 ILCS 5/13-211.

Furthermore, the minor Plaintiff contends that for the reasons set froth above, her §1983 and Eighth Amendment claims should not be dismissed; therefore, the court has no basis on which to dismiss the minor Plaintiff's pendent state claims.

**WHEREFORE**, the Plaintiffs pray for the entry of an order denying the Defendant's 12(b)(6) motion to dismiss and further for an order requiring the Defendant to file her answer to the Amended Complaint with seven (7) days.

_____
Scott Skaletsky

Scott Skaletsky
MOLZHAN, ROCCO, REED & ROUSE LLC
20 N. Clark Street, Suite 2300
Chicago, IL 60602
(312) 917-1880
ARDC # 6181405

7